2934.

JOHN L. YULE v. THE CITY OF NEW ORLEANS. ROBERT HOWES v. the same. (Consolidated.)

The city of New Orleans is not bound to indemnify its citizens for any loss by fire occasioned by the negligence of the fire department. It can not be looked upon as an insurer against such losses.

There is no contract, express or implied, between the citizens and the city of New Orleans to indemnify them for any loss which may occur to them by reason of the burning down of their houses, except in cases specially provided by law.

The Firemen's Charitable Association has always been a voluntary one, its members are not paid, and the $126,000 per annum, allowed to them out of the city treasury, are only a subsidy, to enable the association to carry out its objects.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. Howe & Prentiss, Race, Foster & Merrick*, for plaintiffs and appellees. *G. S. Lacey*, City Attorney, for defendant and appellant.

MORGAN, J. Yule claims from the Firemen's Charitable Association and the city of New Orleans, five thousand dollars. Howes claims from the same defendants thirty-nine thousand five hundred dollars.

They both reside in the third district of this city, where they own property. Their claims rest upon the same state of facts, and are based upon the same law. The cases were consolidated, and tried together. There was judgment, against them in so far as the association is concerned, in their favor as against the city—Yule for $5,000, and Howes for $35,000.

From these judgments the city alone has appealed.

The allegations in both petitions are substantially the same. They aver that on the nineteenth May, 1867, at about the hour of half-past three P. M., a fire broke out on the square in which their property is situated, but remote from it, and that it was all destroyed. They allege that when the fire occurred nearly all the firemen, with

their engines and hooks and ladders, were, by permission of the Common Council of New Orleans and of the Firemen's Charitable Association, at the Fair Grounds, some miles distant from their engine houses, where by law they should have been, and where they "spent the day in feasting, fun and frolic," and they allege that it was because of the absence of the firemen and their engines that their property was destroyed.

The ground upon which they seek to make the association and the city responsible is that the city of New Orleans makes annual assessments upon all the real and personal property in this city, and collects taxes thereon, of which taxes they, the petitioners, pay their share, and that, in consideration thereof, the corporation of New Orleans assumes and by law is bound to protect all residents of the city in the preservation of their property from destruction by fire. They aver that, to this end, the city has sold the contract for the extinguishment of all fires in this city for and during the period of five years from the seventeenth December, 1866, to the Firemen's Charitable Association for the sum of $120,000 per annum, to be paid monthly; that by the terms of this contract the association was at all times to have on duty a certain number of fire engines, attended by a certain number of officers and men for each, ready at the first alarm of fire to repair to and extinguish the same.

The broad question presented by the record is whether or not the city of New Orleans is bound to indemnify its citizens for any loss by fire, occasioned by the negligence of the fire department?

We think not. The city can not, we think, be looked upon in the light of an insurer against losses by fire. Its duty is to protect the lives and property of its citizens, as far as in its power lies, and to promote their comfort and convenience, but it is not to be held responsible for losses by fire. True it is that out of the taxes collected from the citizens $120,000 per annum are paid to the Firemen's Charitable Association. It is also true that this association, in consideration of this sum, have contracted to have always ready for service, and properly manned, fifteen steam engines, four engine companies, and four hook and ladder companies; that the chief engineer of the association is to have the sole command at fires, and, in fact, that the management of the fire companies shall be under the control of this association. But there is no contract on the part of the association by which they undertake to put out all fires which may occur in the city, and there is no contract, express or implied, between the citizens of the city and the city by which the city is to indemnify them for any loss which may occur to them by reason of the burning down of their houses, except in cases specially provided for by statute.

It is true that the city pays $120,000 per annum to the Firemen's

Charitable Association, and that this sum comes from the city treasury. But this is only a subsidy to an association to enable it to carry out its objects.   The fire department of this city has always been a voluntary one; its members are not paid.   On the contrary, they have to contribute to the support of the association out of their own pockets, in addition to which they give their services at all fires—services than which none can be more meritorious or coupled with more exposure, risk and danger, for nothing.   No one, we believe, is paid by them, except those parties who have to be constantly at the station houses, such as engineers, hostlers, etc., and without this subsidy they could not be kept up.

It is also true that the police of the city are paid by the city, and that it is their duty to protect the lives of its citizens, but we do not understand that the city is responsible in damages for all the crimes and offenses committed within its limits because the people are taxed to pay the police.

The people of the city have, by common consent, allowed their representatives to contribute a certain amount of money for the protection of their common property, but it by no means follows that because they have given this much to prevent loss, if possible, they must in addition, pay for the losses which occur, for, after all it is the people of the city who have to pay.   They have paid enough, we think, when they have allowed $120,000 a year to be contributed for their common defense, and should not be made to pay for damages which they did not cause.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided, annulled and reversed, and that there be judgment in favor of the defendants in both cases, with costs of both courts.